UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Philip Jones,                                                       Civil No. 14-3246 (PJS/FLN)

             Petitioner,

                                                      **REPORT AND**
v.                                                    **RECOMMENDATION**

Denise Wilson, Warden,

             Respondent.

_____

Petitioner, *pro se*.
Ana Voss, Bahram Samie, D. Gerald Wilhelm, and Pamela Marentette,
Assistant United States Attorneys, for Respondent.

_____

This matter came before the undersigned United States Magistrate Judge on Petitioner Philip Jones's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 by a person in federal custody. Pet., ECF No. 1. Jones is currently imprisoned in the Federal Correctional Institution at Sandstone, Minnesota (FCI–Sandstone). In his petition, Jones challenges the result of a prison disciplinary proceeding and subsequent loss of twenty-seven days of good time credits. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that the Petition be **DENIED**.

## I. BACKGROUND

Jones is currently serving a 240-month term of imprisonment, to be followed by eight years of supervised release, after being convicted of possessing more than 500 grams of cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). ECF No. 1 at 2. He was previously confined at FCI–Pekin in Illinois, but is now confined at FCI–Sandstone in Minnesota.

*Id.* Jones has filed the present Petition challenging a disciplinary determination that he participated in a food strike, a violation of the U.S. Bureau of Prisons's ("BOP") policy banning group demonstrations by prisoners. *Id.* at 3. The petition outlines two grounds for relief. First, Jones claims that the Discipline Hearing Officer ("DHO") violated his First Amendment right to religious practice by imposing a sanction against him for participating in the hunger strike, when in fact Jones states that he was fasting for religious reasons. *Id.* Second, Jones claims that the DHO violated his equal protection rights by failing to expunge his incident report even though other prisoners who were fasting at the time of the strike had their incident reports expunged. *Id.* Through his Petition, Jones seeks the restoration of the twenty-seven days of good time credits that he lost as a punishment for participating in the food strike. *Id.*

On July 20, 2015, this Court ordered the Respondent to show cause for why the Petition for a Writ of Habeas Corpus should not be granted on the basis of the alleged violation of Jones's First Amendment rights. Order to Show Cause, ECF No. 17. Respondent conceded in its response that "if Jones was fasting for religious purposes, he should not have been disciplined for doing so." Response 2, ECF No. 21. Respondent contends, however, that "Jones was not disciplined for engaging in a protected religious activity because the disciplinary finding that his claim of fasting for religious purposes lacked credibility is sufficiently supported by the evidence in the administrative record." *Id.*

According to the administrative record, Jones was one of the 187 inmates assigned to the Nebraska housing unit of FCI–Sandstone who did not go to meals between September 28, 2011 and October 2, 2011 in an attempt to regain restricted privileges. Buser Decl. ¶ 3, Ex. 1, ECF No. 14. It was determined during a Special Investigative Supervisor ("SIS") investigation that by simply

failing to attend meals, Jones "demonstrated that he was an active participant in the food strike." Therefore, he was charged with Engaging in a Group Demonstration, in violation of Code 212 of BOP policy. *Id.*

During "mass inmate interviews" on the morning of September 29, 2011, Jones simply stated that he was not a part of the hunger strike. He did not, however, provide any other explanation for his failure to participate in meals. ECF No. 14 at 3, n.2. On November 10, 2011, after Jones was charged with violating Code 212 and advised of his rights, he said only that, "I made a statement." ECF No. 14 at 2. The staff member who charged and advised Jones of his rights at that time "concluded that the report appeared to be true and correct as written and Jones had been appropriately charged." *Id.* Jones had a hearing before the Unit Discipline Committee ("UDC") on November 15, 2011, where he was advised of his rights and told that the UDC was referring his case to the DHO. He was then provided with a Notice of Discipline Hearing before the BOP DHO. *Id.* at 3. During the UDC hearing, Jones stated that "he did not participate in a hunger strike." *Id.* at 3. He also stated that "he was a vegetarian, and because the dining room did not offer much, he ate out of his locker." *Id.*

The DHO hearing took place on January 19, 2012. Prior to the hearing, Jones requested that a particular staff representative be present at his hearing. Upon arriving for his hearing on January 19, however, Jones was informed that his requested staff representative was not available. Rather than reschedule the hearing, Jones waived his right to have a staff representative present at the hearing. *Id.* Thereafter, Jones made the following statement:

> I ate the first meal. I went to chow and gave my tray to inmate Edie Shell. I keep to myself. We didn't get checked by anyone or get shook down or nothing. I was on a religious fast until after sundown. Moorish Americans is me and I had to make up what I missed for Ramadan. It was just a coincidence that it went along with the food

3

> strike. I am a no meat. Yeah, I did the fast on my own. This was my individual decision. I didn't participate with anybody.

*Id.*, Ex. 1 at 11. Jones did not call any witnesses to corroborate his assertion. Upon the completion of the hearing, the DHO found that Jones's claim that he did not attend meals because he was participating in a religious fast was not credible. The DHO noted that in 2009, Jones admitted to "refusing a work or program assignment," and in 2004, he was found to have committed the act of "lying or falsifying a statement." ECF No. 14, n.3. The DHO sanctioned Jones to disallowance of twenty-seven days of good time credit, thirty days of disciplinary segregation suspended pending ninety days of clear conduct, and loss of commissary privileges for 180 days. *Id.* ¶ 13.

The Court notes that five Muslim inmates likewise accused of participating in the food strike had DHO hearings the same day as Jones. However, unlike Jones, these inmates introduced testimony from a prison chaplain, who confirmed that the five Muslim inmates were indeed fasting at the time of the food strike. ECF No. 14 at ¶ 16. During the administrative review process, the DHO expunged the incident reports of the five Muslim inmates. *Id.*

Respondent argues that the DHO's credibility determination is supported by evidence in the record because Jones failed to mention that he was fasting for religious purposes prior to the hearing, despite having the opportunity to do so at: (1) the September 29, 2011 "mass interview," (2) when he was given his incident report and advised of his rights on November 10, 2011 and only stated "I made a statement," and (3) at the UDC hearing where he was again advised of his rights and given notice of the upcoming DHO hearing. ECF No. 14, Ex. 1, ¶¶ 4,6.

Jones exhausted all administrative remedies challenging his DHO hearing and sanctions by filing an appeal with both the Regional Office and the Central office, both of which were denied.

## II. STANDARD OF REVIEW

Federal prisoners seeking a Writ of Habeas Corpus under 28 U.S.C. § 2241 are required to exhaust administrative remedies available within the prison system, before seeking review in federal court. *Willis v. Ciccone*, 506 F.2d 1011, 1015 (8th Cir. 1974) ("If grievance procedures provide an adequate means for impartial review, then a federal prisoner must exhaust available administrative remedies within the correctional system prior to seeking extraordinary relief in federal court."). The BOP has a multi-tiered administrative remedy program through which an inmate may seek "formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. §§ 542.10–.19.

In reviewing actions of the BOP DHO, this Court must "hold unlawful and set aside agency action, findings, and conclusions found to be unwarranted by the facts." 5 U.S.C. § 706(2)(F). "The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board . . . only that there be some evidence to support the findings made in the disciplinary hearing." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 457 (1985). "[C]ourts are to give deference to prison officials and should intercede in prison discipline cases only when the sanctions are wholly unsupported by the record." *Gomez v. Graves*, 323 F.3d 610, 613 (8th Cir. 2003). "Where there is no clearly established judicial interpretation to the contrary, we defer to prison officials' interpretation and application of their rules to the facts so long as that interpretation and application is not objectively unreasonable." *Moorman v. Thalacker*, 83 F.3d 970, 974 (8th Cir. 1996); *see Henderson v. Baird*, 29 F.3d 464, 468 (8th Cir. 1994) (interpretation of "assault" as throwing orange juice on guard was not objectively unreasonable).

### III. CONCLUSIONS OF LAW

It is undisputed that Jones appropriately exhausted all administrative remedies challenging his DHO hearing and sanctions. Therefore, the Petition for Habeas Corpus is ripe for review.

**A.      First Amendment and RFRA Claim**

The First Amendment's Free Exercise Clause and the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, *et seq*. ("RFRA") protect the religious rights of federal inmates. Respondent concedes that disciplining Jones for participating in a religious fast during the food strike would not be permissible under the First Amendment and/or RFRA and acknowledges that "[t]he crux of the issue before the Court is whether Jones's claim that he was participating in a religious fast, rather than participating in the food strike, is credible." ECF No. 21 at 7.

This Court must give deference to the BOP DHO and will only reverse the disciplinary action if the credibility determination is wholly unsupported by the record. *Gomez*, 323 F.3d at 613. This is because "federal courts are not part of the appellate process for prison disciplinary proceedings." *Toombs v. Hicks*, 773 F.2d 995, 997 (8th Cir. 1985). Therefore, courts must not "set aside decisions of prison administrators that have some basis in fact." *Hill*, 472 U.S. at 456. Where "the record identifies evidence that could support the conclusion reached by the disciplinary board, the Court is direct[ed] to look no further into Jones's evidentiary challenges." *Gonzalez v. United States*, No. 14-1263, 2015 WL 283284, at *5 (D. Minn. Jan. 22, 2015).

The totality of the administrative record shows through ample evidence from the SIS investigation that Jones was an active participant in the food strike. ECF No. 14, Ex. 3. He failed to attend meals, as reported by officers and video surveillance footage, and his entire assigned housing unit was determined to have engaged in the group demonstration. *Id.* The DHO noted that "if Jones did not wish to participate in the food strike, he could have demonstrated that by attending the meals, even if he did not eat, but he instead choose to not attend the meals." *Id.* Furthermore, Jones did not claim to be fasting for religious purposes until the DHO hearing even though he had

multiple prior opportunities to explain that he was not participating in a group demonstration. Additionally, Jones's claims that he attended at least one of the meals was contradicted by officer reports and video surveillance footage. ECF No. 14. The DHO also found Jones less credible given that he had previously committed the act of lying or falsifying a statement in 2004. *Id.* Based on the administrative record, it is clear that the DHO's credibility determination was not wholly unsupported. Accordingly, this Court must affirm the disciplinary action. *See Gomez*, 323 F.3d at 613.

**B.     Equal Protection Claim**

Jones additionally argues that his equal protection rights were violated when the DHO expunged the incident reports of five Muslim inmates while failing to expunge his report. A violation of an inmate's equal protection rights occur if there is a showing that he is a member of a protected class and that a fundamental right was violated. U.S. Const. amend. XIV. Otherwise the inmate must show that "similarly situated classes of inmates are treated differently, and that this difference in treatment bears no rational relation to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998). He also must show intentional or purposeful discrimination. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994).)

After reviewing the record, the Court concludes that the DHO did not violate Petitioner's equal protection rights. First, the five inmates whose records were expunged presented testimony from a prison chaplain at their hearing that they were fasting prior to the food strike. Conversely, Jones waived his right to a representative and chose not to call any witnesses to substantiate the claim that he was engaging in a religious fast. ECF No. 14. Additionally, as stated above, the evidence in the record supports the DHO's determination that Jones participated in a group

demonstration. Thus, any difference in the way the DHO treated the five muslim inmates and the way Jones was treated, is rationally related to a legitimate penal interest, namely, disciplining an inmate for violating the BOP code. *Weiler*, 137 F.3d at 1051.

Jones received a full hearing before the DHO, the DHO had made written findings sufficient to meet procedural due process requirements, and there was some evidence in the record supporting the DHO's findings that Jones was not engaged in a religious fast. *See Hill*, 472 U.S. at 455–56. Therefore, the Court concludes that Jones has not shown that any of his fundamental rights were violated, or that he was treated differently from a similarly situated class of inmates in a way that bears no rational relationship to a legitimate penal interest. Accordingly, Jones's equal protection claim necessarily fails.

### III. RECOMMENDATION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Jones's Writ of Habeas Corpus be **DENIED**.


DATED: November 20, 2015         *s/Franklin L. Noel*
                                 FRANKLIN L. NOEL
                                 United States Magistrate Judge


### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.